IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CSL PLASMA INC., *et al.*,<br><br>   *Plaintiffs*,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION, *et al.*,<br><br>   *Defendants*. | Civil Action No. 1: 21-cv-2360 |
| AMAYA, *et al.*,<br><br>   *Plaintiffs*,<br><br>v.<br><br>U.S. CUSTOMS AND BORDER PROTECTION, *et al.*,<br><br>   *Defendants*. | Civil Action No. 1: 22-cv-242 |

**PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO
PLAINTIFF' NOTICE REGARDING THE D.C. CIRCUIT'S MANDATE**

In light of the D.C. Circuit's decision, Defendants now admit that "the Immigration and Nationality Act's B-1 visa classification contains 'no international nexus requirement' when it comes to identifying permissible 'business' activity." Resp. 1 (quoting *CSL Plasma Inc. v. CBP*, 33 F.4th 584, 592 (D.C. Cir. 2022)). They admit that "the fundamental distinction" in the B-1 visa provision "is between business and labor." *Id.* (quoting *CSL Plasma*, 33 F.4th at 592–93). And they admit that any "international nexus matters [*only*] for understanding the B-1 restriction on

1

'labor.'" *Id.* (quoting *CSL Plasma*, 33 F.4th at 593) (Defendants notably omitted the key word "only" from their presentation of this quotation).

From these accepted premises, a three-part framework arises:

*First*, the Court must determine whether the conduct at issue is "business" under the B-1 visa provision, which CBP regulations define as "legitimate activit[y] of a commercial … nature." 22 C.F.R. § 41.31(b)(1). In answering this question, it is irrelevant whether the conduct is purely domestic activity or a necessary incident to international trade or commerce, because there is no international nexus requirement for B-1 business. That is the emphatic holding of the D.C. Circuit's decision. *See CSL Plasma*, 33 F.4th at 591–93.

*Second*, the Court must determine whether the alien's business nevertheless falls within the exception for "skilled or unskilled labor." 8 U.S.C. § 1101(a)(15)(B). If the Court determines that the conduct *is* business but *not* labor, then that is the end of the analysis.

*Third*, if the Court determines that the alien's conduct *is* labor, then it must determine whether that labor amounts to impermissible "local employment or labor for hire." 22 C.F.R. § 41.31(b)(1). It is only in this context that any international nexus is relevant. *See id.* at 593 ("[T]he international nexus matters only for understanding the B-1 restriction on 'labor.'"). Even if an alien is engaged in labor, that labor is still permissible under the B-1 visa provision if it has "a connection to international trade or commerce." *CSL Plasma*, 33 F.4th at 592 (quoting *Mwongera v. INS*, 187 F.3d 323, 329 (3d Cir. 1999)).

In their response, Defendants do not dispute that donating plasma in exchange for payment is *business*. Nor could they. As they admitted in the court of appeals, "[t]he purchase and sale of plasma … is … commercial activity." Appellees' Br. 30. Step one of the above framework is thus satisfied.

Instead, Defendants argue "the sale of plasma is prohibited 'labor.'" Resp. 2. And they seem to reach that conclusion based entirely on their view that "the sale of plasma by Mexican nationals is a *purely domestic activity*." *Id.* (emphasis added). According to Defendants, "the sale of plasma is prohibited 'labor' within the meaning of the B-1 visa provision" because "the collection of plasma does not involve any *international transfer of goods*, because the plasma is not a good until it is extracted; compensation is provided *in the United States* with *United States currency*; and the foreign donors have *no principal place of business abroad*." *Id.* at 2 (emphasis added).

The problem with reasoning is that it completely skips over step two of the above framework, assuming, without any analysis, that donating plasma is, in fact, *labor*. And it reaches the wrong conclusion. As Plaintiffs have explained at length in their prior submissions to this Court and the court of appeals, donating plasma is not "labor," as that term is used in the statute and the regulations. The word "labor" means to "work, esp[ecially] with great exertion." *Labor*, Black's Law Dictionary (11th ed. 2019). And the word "work" is defined as "[p]hysical and mental exertion to attain an end." *Work*, Black's Law Dictionary (11th ed. 2019).[1] None of these definitions or examples encompasses donating plasma, which involves no "work," "exertion," "employment," or "labor for hire," on the part of the donor. That is in contrast to Plaintiffs' employees, who perform donor intake, draw donors' blood, operate plasmapheresis machines, and otherwise care for

---

[1] These dictionary definitions are consistent with the governing regulation, which excludes "local employment or labor for hire." 22 C.F.R. § 41.31(b)(1); *see Employment*, Black's Law Dictionary (11th ed. 2019) ("Work for which one has been hired and is being paid by an employer."). And they are consistent with the Foreign Affairs Manual, which exempts specific classes of labor— domestic workers (like nannies), yacht crewmen, stable hands, teachers—who do the sort of physical and mental work associated with "labor." *See* 9 FAM § 402.2-5(C)(4)-(5), (8), 402.2-5(D), 402.2-5(F)(2).

donors. Unlike donors, these employees are engaged in quintessential physical and mental "work" in exchange for "wages," *i.e.*, "labor."

Indeed, as the Court is aware, the Department of Justice *agreed* with Plaintiffs on this dispositive point up until they appeared in this litigation. In a Statement of Interest filed a month after the issuance of the Plasma Ban, the Justice Department repeatedly and unequivocally called it "mistaken" to assert that the relationship between a plasma donor and a collection center is "akin to employment or contract work." U.S. Statement of Interest at 8, *Gomez v. CSL Plasma*, No. 1:20-cv-02488 (N.D. Ill. July 14, 2021) (ECF No. 50). That analysis is plainly right, and Defendants' position here is plainly wrong. From the perspective of the donor, donating plasma is "business" but *not* "labor," and therefore, per the D.C. Circuit, "[t]here is no international nexus requirement." *SL Plasma*, 33 F.4th at 592.

Finally, even if the Court were to find that donating plasma is labor, Plaintiffs have established an international nexus here—both as to the plasma companies, which are engaged in international commerce in every sense of the word, and to the Mexican nationals who donate plasma, which they generate in Mexico, at Plaintiffs' collection centers in the United States. Plaintiffs demonstrated through unrebutted evidence that the plasma companies have organized their businesses and made substantial investments to attract Mexicans who have B1 visas to cross the U.S.–Mexico border to donate blood plasma at Plaintiffs' collection centers in order to meet the rising global demand for plasma-derived therapies. The companies invested hundreds of millions of dollars to open and operate dozens of collection sites near the southern border in reliance on CBP's longstanding prior practice of allowing entry to plasma donors with B-1 visas. And, prior to the Plasma Ban, they directly solicited Mexican donors in border communities through billboards and advertisements on Spanish-language radio. Indeed, even CBP's so-called Guidance itself

recognized "the role of the plasma donation business *in cross border commerce*." *CSL Plasma v. CBP*, No. 21-cv-2360 (D.D.C. Sept. 23, 2021) (ECF 16-1) (emphasis added). Beyond that, the plasma companies—which have international parent companies based in Australia (CSL Limited) and Spain (Grifols S.A.)—play a critical role in the "international trade or commerce" of blood plasma, which is the critical ingredient in creating life-saving therapies relied upon by patients not only in the United States but around the world. All of these facts provide precisely the "international nexus" required to satisfy step three of the above framework, even assuming that plasma donation is labor (which, again, it is not).

For these reasons, and those set forth in Plaintiffs' prior briefing, the Court should grant Plaintiffs' motions for a preliminary injunction without delay.

DATED: June 30, 2022

           Respectfully submitted,

           */s/ Baruch Weiss*
           Baruch Weiss (D.C. Bar No. 388977)
           R. Stanton Jones (D.C. Bar No. 987088)
           Pari R. Mody (D.C. Bar No. 1032210)
           Stephen K. Wirth (D.C. Bar No. 1034038)
           ARNOLD & PORTER KAYE SCHOLER LLP
           601 Massachusetts Ave., N.W.
           Washington, DC 20001
           Tel.: (202) 942-5000
           Fax: (202) 942-5999

           *Attorneys for Plaintiffs*